IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

VINCENT CASSEUS,

Petitioner,

v.

WARDEN E. EMMERICH,

Respondent.

OPINION and ORDER

26-cv-206-jdp

---

Petitioner Vincent Casseus, proceeding without counsel, alleges that officials at FCI Oxford denied him procedural due process during disciplinary proceedings for possessing a cellphone. Casseus brings an emergency petition for writ of habeas corpus under 28 U.S.C. § 2241, and he seeks restoration of 41 days of good-conduct time. Casseus says that if his good-conduct time is restored, he will be released from custody on April 24, 2026.

Respondent answered the petition. Dkt. 10. Casseus requested an expedited ruling, so the court did not authorize a reply. Respondent's evidence supports the determination that Casseus used a cellphone to make voice and video calls and to send text messages, in violation of Bureau of Prisons policy. Casseus's contentions are mostly contradicted by the evidence and otherwise unsupported. I will deny the petition.

BACKGROUND

On December 15, 2025, Casseus was served with an incident report, prepared by B. Wormet, based on his possession of a cellphone. Dkt. 11-3 at 2; Dkt. 11-4 at 4. According to Wormet, on December 10, 2025, staff recovered a cellphone from inside a heat vent cover in the Columbia Unit shower area. Dkt. 11-3 at 2. Wormet searched the phone and found that

there were several phone numbers associated with several prisoners on it. *Id.* Three of the phone numbers, Wormet determined, were associated with Casseus because they were on his institution contact list. *Id.*

When the report was served on Casseus, he stated: "I am not in Columbia Unit, I live in Dane Unit. I never use[d] this cell phone. That was a Dominican contact I was in prison with, more than a year ago[,] that number was blocked. It is blocked from my account, and I have not called it since. Lots of inmates have that number." Dkt. 11-4 at 4. It is documented that, at that time, Casseus did not request any witnesses at his disciplinary hearing. *Id.*

On December 29, 2025, a revised incident report, prepared by Wormet, was served on Casseus. *Id.* at 2. The revised report was substantially identical to the original report, except that Wormet wrote that there was contact between the cellphone and only one number on Casseus's contact list. *Id.*

The unit disciplinary committee (UDC) investigated the charge. Dkt. 11-4. During the UDC's investigation, Casseus stated: "I never used the phone. There was [a] Dominican in the unit who used the phone and called that number I gave him. This inmate has since [been] released . . and I don't know his name or number." *Id.* Due to the charge's seriousness, the UDC referred the case to the discipline hearing officer. *Id.* at 3.

That day, Casseus acknowledged receiving "Inmate Rights at Discipline Hearing" and "Notice of Discipline Hearing" forms. Dkt. 11-5 at 2; Dkt. 11-6 at 2. Casseus indicated that he wanted a staff representative, but that he did not want any witnesses. Dkt. 11-6 at 2.

The discipline hearing officer (DHO), L. Russell, held a hearing on the revised incident report on January 14, 2026. Dkt. 11-7 at 2. Casseus was present with his staff representative, Ms. Cadigan. Dkt. 11 ¶ 12; Dkt. 11-7 at 2. Russell says that Cadigan stated that Casseus had

2

asked her to find out if the phone number from his contact list found in the cellphone was on another prisoner's contact list, but that, from what she could tell, the number was on Casseus's contact list only. Dkt. 11 ¶ 12; Dkt. 11-7 at 2. Cadigan also said that she saw that there were voice and video calls and text messages exchanged with that number. Dkt. 11 ¶ 12; Dkt. 11-7 at 2.

Russell says that he advised Casseus of his right to present witnesses, but that he did not request any. Dkt. 11 ¶ 13; Dkt. 11-7 at 3. Russell also says that the only evidence that Casseus submitted at the hearing was his verbal statement. Dkt. 11 ¶ 14; Dkt. 11-7 at 2. Russell summarized that statement as, "I never used the phone. That number has been blocked on my account for over a year. I don't know that number." Dkt. 11 ¶ 14; Dkt. 11-7 at 2.

Russell found Casseus guilty as charged. Dkt. 11 ¶ 18; Dkt. 11-7 at 3–5. Among other sanctions, Russell disallowed 41 days of good-conduct time. Dkt. 11 ¶ 18. Russell provided Casseus with a copy of his DHO report on February 23, 2026. Dkt. 11 ¶ 19; Dkt. 11-7 at 5.

ANALYSIS

Casseus contends that he was denied procedural due process during the disciplinary proceedings for three interrelated reasons. First, Casseus contends that he was denied an adequate opportunity to call witnesses and present evidence in his defense. Dkt. 2 at 5–6. Casseus says that he should have been provided with exculpatory evidence, namely, "activity logs and video account evidence." *Id.* at 6. Casseus faults Cadigan for failing to obtain this evidence. *Id.* at 6–7. Casseus says that, at the hearing, Russell showed him copies of text messages between the cellphone and the number on his contact list that were written in "pr[is]tine Spanish," which Casseus says he doesn't speak because he's a Haitian national.

3

*See* Dkt. 1 at 3. This fact, the argument goes, shows that calls and messages between the cellphone and the number list were made by Spanish-speaking prisoners. *See* Dkt. 2 at 7–9. Casseus says that two prisoners, Prisciliano Pascacio Pacheco and Jose Garcia-Matus, admitted using the cellphone, and that Cadigan failed to interview them before the hearing despite his request. *Id.* at 9. Along similar lines, Casseus says that the phone number that he was accused of contacting was blocked from his contact list, primarily because it appeared on several other prisoners' contact lists. Dkt. 1 at 2–3. Casseus adds that if Cadigan had done her "due diligence," she would have discovered that fact. *Id.* at 3.

Second, Casseus contends that Russell's finding of guilt was not supported by adequate evidence. Dkt. 2 at 5. Casseus says that the only evidence of his guilt was the was activity between the cellphone and a phone number found on his contact list. *Id.*

Third, along similar lines, Casseus suggests that Russell was biased against him. Casseus says that when Russell showed him the Spanish-language text messages, he told him: "I know [you're] not the one who used the phone; I am finding you guilty because the number was found in your contacts." Dkt. 2 at 7–8. Casseus adds that Russell "illusively kept this fact out of his report." Dkt. 1 at 3.

Due process requires prisoners in disciplinary hearings to receive: "(1) advance (at least 24 hours before hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence . . . ; and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action." *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007). "[S]ome evidence" must support Russell's decision. *Walpole v. Hill*, 472 U.S. 445, 455 (1985); *Smith v. Bezy*, 141 F. App'x 479, 481 (7th Cir. 2005).

Regarding the first element, Casseus does not allege that he failed to receive advance written notice of the disciplinary charge, and the evidence shows that he received that notice. On the fourth element, the evidence shows that Casseus received a copy of the DHO report, which he acknowledges in his petition. Accordingly, I need only examine the second and third elements and consider whether some evidence supported Russell's guilty finding.

I begin with the second element, the opportunity to be heard before an impartial decision maker. Russell is entitled to a strong presumption of honesty and integrity in his role as the hearing officer. *See Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *O'Donnell v. Davis*, 115 F. App'x 869, 872 (7th Cir. 2004). Assertions of bias against a hearing officer are held to a "high" standard; unsupported assertions don't meet this standard. *Piggie*, 342 F.3d at 666; *Martin v. Zatecky*, 749 F. App'x 463, 466 (7th Cir. 2019); *Smith v. Neal*, 660 F. App'x 473, 475 (7th Cir. 2016). Casseus must show "clear evidence of bias." *See Nelson v. Stevens*, 861 F. App'x 667, 670 (7th Cir. 2021).

Casseus says that Russell showed him Spanish-language text messages, telling him: "I know [you're] not the one who used the phone; I am finding you guilty because the number was found in your contacts." Dkt. 2 at 7–8. Casseus adds that Russell "illusively kept this fact out of his report." Dkt. 1 at 3. Russell disputes these statements. Russell says that he did not have the cellphone or any copies of text messages, whether in Spanish or another language, at the hearing. Dkt. 11 ¶ 17. Russell adds that he never would have made the statements that Casseus says that he made. *Id.* Russell included with his declaration the documents that he considered at the hearing. *See id.* ¶ 15. None of those documents includes any text messages, Spanish or otherwise. Casseus's unsupported statement that Russell was biased doesn't overcome the strong presumption that Russell discharged his duties impartially.

I turn to the third element, the opportunity to call witnesses and present documentary evidence. The evidence shows that Casseus forfeited his right to call any witnesses. Russell says, and the DHO report reflects, that Casseus did not ask to present any witnesses. Dkt. 11 ¶ 13; Dkt. 11-7 at 3. It was also documented that Casseus did not ask for any witnesses when the original incident report was served on him. Dkt. 11-4 at 4. Similarly, Casseus indicated on the notice of discipline hearing form, which he signed, that he did not want any witnesses. Dkt. 11-6 at 2. Against this evidence, Casseus's unsupported statements that he asked Cadigan to investigate, and Russell to present, Spanish-speaking witnesses don't suggest that he invoked this right. *See Garlotte v. Fordice*, 515 U.S. 39, 46 (1995) ("[T]he habeas petitioner generally bears the burden of proof[.]"); *McFarland v. Scott*, 512 U.S. 849, 856 (1994) (habeas petitions "must meet heightened pleading standards").

Regarding documentary evidence, Russell says, and the DHO report reflects, that the only evidence that Casseus submitted at the hearing was his verbal statement. Dkt. 11 ¶ 14; Dkt. 11-7 at 2. So if Casseus had documentary evidence before the hearing, he forfeited his right to submit it at the hearing.

But that omission would not automatically preclude the submission of other documentary evidence on Casseus's behalf. Prisoners "are entitled to have *exculpatory* evidence disclosed unless its disclosure would unduly threaten institutional concerns." *Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002) (emphasis added).

I take Casseus to contend that BOP officials denied him three types of exculpatory evidence: (1) activity logs, video account evidence, and Spanish-language text messages from the cellphone; (2) records showing that the phone number that he was accused of contacting with the cellphone was on other prisoners' contacts list; and (3) records showing that the

6

number had been blocked on his contact list. This contention is mostly contradicted by the record, and it is otherwise unsupported.

Regarding the second item, the DHO report says that Cadigan stated that, from what she could tell, the phone number was on Casseus's contact list only. Dkt. 11-7 at 2. Casseus says that Cadigan's statement was false, or that she didn't do her "due diligence." Dkt. 1 at 3. But Casseus did not submit any evidence to support this assertion; he only assumes that helpful evidence exists. *See id.* This pure speculation doesn't warrant habeas relief. *See Annamalai v. Emmerich*, No. 24-cv-204-jdp, 2025 WL 3755423, at *3 (W.D. Wis. Dec. 23, 2025). Regarding the third item, BOP records confirm that the phone number was not blocked on Casseus's contact list. Dkt. 11-11 at 6.

The first item involves activity logs, video account evidence, and Spanish-language text messages from the cellphone. Regarding the activity logs and video account evidence, Cadigan stated that she saw that there were voice and video calls and text messages exchanged with the phone number that appeared to be on Casseus's contact list only. Dkt. 11-7 at 2. This statement tends to show Casseus's guilt; it does not suggest that the cellphone contained exculpatory evidence. Again, Casseus's speculation that it did does not warrant habeas relief. *See Annamalai*, 2025 WL 3755423, at *3. Regarding Spanish-language text messages, Russell says that he did not have the cellphone or copies of any such messages at the hearing. Dkt. 11 ¶ 17. Casseus's unsupported statement that Russell showed him Spanish-language text messages but failed to note that fact in his report doesn't show bias or the denial of exculpatory

evidence. *See, e.g.*, *Martin*, 749 F. App'x at 466; *Nelson*, 861 F. App'x at 670; *see also Garlotte*, 515 U.S. at 46; *Scott*, 512 U.S. at 856.[1]

Along similar lines, Casseus faults Cadigan for not obtaining the documentary evidence discussed above. But there's no constitutional entitlement to the assistance of a staff representative in prison disciplinary proceedings if the prisoner is literate and the case is not complex. *See Wolff*, 418 U.S. at 570; *Aguilar v. Endicott*, 224 F. App'x 526, 528 (7th Cir. 2007). This case is not complex, and Casseus, who according to BOP records speaks English and French Creole, has now litigated three habeas petitions in this court without counsel. *See* Dkt. 11-4; *Casseus v. Emmerich*, 25-cv-477-jdp; *Casseus v. Emmerich*, 24-cv-776-jdp. Casseus did not have a constitutional right to Cadigan's assistance, though he hasn't shown that her assistance was deficient.

The last issue is whether some evidence supported Russell's decision. The "some evidence" requirement is quite lenient; sanctions imposed in a prison disciplinary hearing are subject to the "narrowest judicial review." *See United States v. Kizeart*, 505 F.3d 672, 675 (7th Cir. 2007). The issue is whether there is any evidence in the record, even just a "modicum," that could support the hearing officer's decision. *Hill*, 472 U.S. at 455–56. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* at 455.

This lenient standard is satisfied here. "[C]ourts have found that the presence on a cell phone of a number which *only* appears on a particular inmate's approved phone list constitutes

---

[1] Casseus says that the purported text messages were written in "pristine Spanish." If Casseus doesn't speak Spanish, as he says, it's unclear how he could have made that determination. This observation raises doubts about the reliability of this statement.

'some evidence' that such inmate possessed the cell phone in question." *Fernandez v. Hollingsworth*, No. 15-cv-7094, 2018 WL 2278097, at *2 (D.N.J. May 18, 2018) (emphasis in original). Cadigan determined that there were calls and messages between the cellphone and a number that was on only Casseus's contact list. Prison records showing that the number was on only Casseus's list corroborated Cadigan's statement. *See* Dkt. 11 ¶ 16; Dkt. 11-11 at 6. I will deny the petition.

## ORDER

IT IS ORDERED that:

1.  Petitioner Vincent Casseus's emergency petition, Dkt. 1, is DENIED.

2.  The clerk of court is directed to enter judgment and close the case.

Entered April 14, 2026.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge